

**ORDERED in the Southern District of Florida on March 11, 2015.**

Robert A. Mark, Judge
United States Bankruptcy Court

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:                              )    CASE NO.   07-14000-RAM
                                    )    CHAPTER    7
PYARALI R. CHARANIA,                )
                                    )
                                    )
              Debtor.               )
                                    )
                                    )

ORDER SUSTAINING OBJECTION TO HOMESTEAD
EXEMPTION AND DENYING MOTION TO AVOID LIEN AS MOOT

When the Debtor filed his chapter 7 petition in 2007 he believed he had previously conveyed his interest in a home by a quit-claim deed to his son and daughter-in-law. The quit-claim deed was never recorded. In early 2007, prior to the bankruptcy filing, Creditor J&D Financial Corporation ("J&D") obtained a

1

judgment against the Debtor and recorded its judgment against the home. Now, 7 years later, the Debtor is seeking to strip J&D's lien by claiming that the home he thought he had conveyed was his homestead. For the reasons discussed below, the Court finds that the Debtor cannot claim the homestead exemption on property he did not believe he owned at the time of his original bankruptcy filing.

### Undisputed Facts and Procedural History

On April 3, 1993 the Debtor's son, Sultanali Charania, and daughter-in-law transferred to the Debtor an interest in real property located at 1740 NE 199 Street, Miami, FL 33179 (the "Home"). Ten years later on July 18, 2003, the Debtor executed a quit-claim deed transferring back to his son and daughter-in-law his interest in the Home and sought to have the deed recorded (the "2003 Deed"). When the Debtor presented the 2003 Deed to the Miami-Dade Recorder of Deeds, an agent or representative from Miami-Dade incorrectly informed the Debtor that he was not on title to the Home and that there was no need to record the 2003 Deed nor pay documentary stamps.

On January 16, 2007 J&D obtained a Summary Final Judgment (the "Judgment") against the Debtor and the Debtor's son, among other individuals and entities. J&D recorded the Judgment in the Miami-Dade County Official Records on January 18, 2007. On

May 25, 2007 the Debtor filed for bankruptcy, but failed to list the Home in Schedule A or claim the Home as exempt in Schedule C. The Debtor's son also filed for bankruptcy on May 25, 2007 (Case No. 07-13998-LMI). Both the Debtor's bankruptcy case and his son's bankruptcy case were filed by the same attorney, Lynn H. Gelman, Esq.

The Debtor's son, in his case, lists the Home in Schedule A as real property jointly owned by him and his wife, but fails to schedule it as exempt in Schedule C. Despite not claiming the homestead exemption, the Debtor's son moved to avoid J&D's judicial lien (DE #23 in Case No. 07-13998) pursuant to 11 U.S.C §522(f), arguing that J&D's lien should be avoided as a lien impairing his exempt homestead property. The motion was not opposed and Judge Isicoff entered an Order on October 26, 2007 (DE #25 in Case No. 07-13998-LMI) granting the motion and avoiding J&D's lien. On October 21, 2007 the Debtor received his discharge and the case was closed on November 20, 2007. Similarly the Debtor's son was issued a discharge on September 20, 2007 and his case was closed on November 20, 2007.

Almost 7 years later, on August 21, 2014, the Debtor filed a motion to reopen the case [DE #25] which this Court granted [DE #28]. According to the Debtor, the motion to reopen was filed because in July of 2014 the Debtor's son and daughter-in-

law tried to sell the Home and upon a title search discovered the Debtor's interest in the Home [DE #25, ¶ 9].

After the case was reopened, a chapter 7 trustee was appointed, the Debtor added J&D as a creditor, and the Debtor amended Schedules A and C to list the Home and to claim it exempt as his homestead. He also filed a Motion to Avoid Lien Impairing Exempt Property [DE #37]. On October 31, 2014, J&D filed a Motion for Order Tolling Time to Object to Exemptions and Granting J&D Leave to File Objections Out of Time [DE #45] (the "Motion to Toll Deadline") which asked, among other things, for more time to  object to the Debtor's new homestead claim.

After briefing and argument on notice issues, on December 5, 2014 the Court entered its Order Deeming Objection to Exemption Timely and Setting Further Hearing [DE #63] (the "Order Deeming Objection to Exemption Timely"). The Order Deeming Objection to Exemption Timely held that J&D timely objected to the Debtor's new claim of a homestead exemption.  On December 22, 2014 the Debtor filed his Motion for Reconsideration of the Order Deeming Objection to Exemption Timely [DE #67] (the "Motion to Reconsider"), which the Court denied  after a hearing on January 29, 2015. Following the denial of the Motion to Reconsider, the Court, at the January 29th hearing, heard arguments on J&D's Objection to Claimed Homestead Exemption [DE #64] (the "Homestead Objection").

### Summary of the Arguments

In his response to the Homestead Objection [DE #79] (the
"Response"), the Debtor argues that, pursuant to Florida law, he
is entitled to claim the Home as his homestead because he lived
in the Home prior to filing for bankruptcy, lives there now, and
always intended to permanently reside in the Home.

J&D, in its Objection to Claim of Homestead and Reply to
the Response [DE #80], in turn makes three arguments:

1) The Debtor cannot claim the Home as his homestead
   because he did not have an ownership interest in
   the Home at the time he filed for bankruptcy.

2) The Debtor cannot claim the Home as his homestead
   because he did not have the intent to permanently
   reside in the Home  at the time he filed for
   bankruptcy.

3) By not listing the Home at the time he filed for
   bankruptcy, the debtor waived his right to claim
   the Home as his homestead.

There are material issues of fact as to whether the 2003
Deed transferred the Debtor's interest in the Home to his son
and daughter-in-law, which issue is further complicated by the
Debtor's son's bankruptcy and the avoidance of J&D's lien in
that case. Since the 2007 bankruptcies of the Debtor and his

son, one thing is apparent now: the Debtor is on title to the Home and J&D's lien against the Debtor's interest in the Home, if it can be avoided, must be avoided in this case. Because the Debtor's intent at the time he filed for bankruptcy, is, by itself, dispositive as to whether the Home is the Debtor's homestead, the Court need only decide this issue.

## Discussion

To qualify for homestead protection under Florida law, an individual must occupy the property and have the actual intent to permanently live in that property. *Hillsborough Inv. Co. v. Wilcox*, 13 So.2d 448 (Fla. 1943). The Debtor states that he meets both requirements. It is not disputed that the Debtor lived and continues to live in the Home. However, based on the undisputed facts, the Court finds that the Debtor could not have legally intended to permanently reside in the Home at the time he filed for bankruptcy when he unequivocally states that he did not believe that he had an ownership interest in the Home at that time after either conveying or attempting to convey his interest to his son and daughter-in-law.

The Florida Supreme Court holdings in *Semple v. Semple*, 89 So. 638 (Fla. 1921) ("*Semple*") and *Cooke v. Uransky,* 412 So.2d 340 (Fla. 1982) ("*Cooke*") support this conclusion. In *Semple,* to determine the validity of a real estate transfer, the court

first had to determine whether the real property at issue was
the homestead of the transferor. The husband in that case had
transferred real property to his wife prior to the family moving
into the property. Even though the husband testified that he
intended to permanently reside in the real property, much like
the Debtor in this case, the court found that he could not have
the intent to permanently reside in property that he had
conveyed. As the court explained:

> Two positive intentions of a contradictory
> character cannot exist at the same time. The
> proof is clear both by testimony of Semple,
> and from his act in executing the deed, that
> two months before the property was capable
> of occupancy his intention was to place the
> title in his wife. This entirely overcomes
> any proof of a contrary intention. The
> intention to hold the place as his
> homestead, and the intention to give it to
> his wife, could not exist at the same time,
> and where the latter intention culminated in
> the specific act of executing a deed of
> conveyance to his wife, all inferences or
> presumptions of a different intention drawn
> from other facts and circumstances
> necessarily fail.

*Semple*, 82 Fla. 143-144.

In *Cooke*, the court held that a Canadian citizen who was
not registered as a resident alien, did not have a permanent
visa, and was in the United States only as a tourist, could not
claim homestead protection for a property he owned in Florida.
The court held that although Mr. Cooke might have believed he
was going to permanently reside in his Florida property, Mr.

Cooke could not legally formulate that intent and that therefore, his homestead claim had to be denied. *Cooke*, 412 So.2d 341-343. Whether a person can legally formulate the intent to permanently reside in a home is based on whether that person has the "legal power to rightfully and in good faith make the subject property their 'permanent home.'" *Id*.

The Debtor stated in the Motion to Reopen that he filed his bankruptcy petition "reasonably believing that he did not have an ownership interest in the [Home]." [DE #25 ¶ 8]. Further evidence of the Debtor's lack of intent to permanently reside in the Home is the fact that his interest in the Home was only discovered after the Debtor's son and daughter-in-law attempted to sell the Home. How could the Debtor have had the requisite intent to permanently reside in the Home when all of the family members believed that the son and daughter-in-law owned the Home and had full authority to sell it? In sum, 7 years after filing this case, the Debtor cannot return to this Court and claim that he intended to permanently reside in property that he did not believe he owned. Therefore, it is -

**ORDERED** as follows:

1. The Objection to Claim of Homestead is sustained.

2. The Motion to Avoid Lien is denied as moot.

```
                              ###
```

COPIES TO:

John A. Moffa, Esq.
Jayson B. Ruff, Esq.
Marc I. Goldsand, Esq.